UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THEODORE K. THORNTON,

                Plaintiff,

– *against* –

JACQUELINE L. YOUNG,

                Defendant.

**OPINION & ORDER**

20 Civ. 10606 (ER)

RAMOS, D.J.:

    Theodore K. Thornton brought this action against Jacqueline L. Young for an alleged breach of contract.  Thornton alleges that Young failed to pay him for the services he performed pursuant to an agreement whereby he would attend to her financial affairs while she was recovering from a stroke.  Doc. 6.  Pending before the Court is Thornton's motion to voluntarily dismiss the instant action, without prejudice, pursuant to Federal Rule of Civil Procedure 41(a)(2).  Doc. 14.  Young argues that the motion should be denied or the action dismissed, with prejudice, unless Thornton agrees to certain conditions.  Doc. 17.  For the reasons set forth below, Thornton's motion is GRANTED.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Factual Background**

    Thornton and Young met several years ago by telephone through their involvement with a start-up pharmaceutical company, Immune Therapeutics.  ¶ 6.[1]  In March 2019, Young was hospitalized after suffering a stroke.  ¶ 5.  At the time of her hospitalization, Young's financial condition was poor, largely due to the failure of Immune Therapeutics to pay her for the royalties due for licensed drug patents, in breach

---

[1] Unless otherwise noted, citations to "¶ _" refer to the Complaint, Doc. 6.

of a patent licensing agreement. ¶ 6.² Additionally, Young's expenses and financial obligations far exceeded her ability to meet them. ¶ 7.

In March 2019, Young was receiving only $1,500 per month in Social Security income. ¶ 7. Meanwhile, she owed $1,600 per month in co-op maintenance fees, for which she was approximately $20,000 in arrears. *Id.* As a result, the co-op board obtained a final judgment against her and served her with an eviction notice. *Id.* Further, Young had approximately $45,000 in credit card debt, owed $38,000 to individuals for services rendered, and had a general lien filed against her by the Internal Revenue Service for approximately $55,000. *Id.*

Concerned for her long-term financial stability, a mutual friend requested that Thornton help manage Young's personal financial affairs during her recovery. ¶ 8. Thornton agreed and devised a strategy to restructure Young's personal financial affairs. ¶ 9. This strategy involved selling Young's co-op unit, settling or renegotiating certain debts, and relocating Young to a place with a lower cost of living. *Id.* Thornton reviewed the strategy with Young's personal attorney, William Pinzler, and her brother, Michael Young. ¶¶ 8–9. During their discussions, a plan for Thornton's compensation was "proposed, orally agreed upon, and reviewed with Young," which included "reimbursement and interest profit on funds laid out by Thornton on Young's behalf, and a modest hourly rate for time spent." ¶ 9. Further, Thornton also asked Young to execute a general power of attorney. *Id.* This power of attorney was reviewed by Young's personal attorney and executed by Young. *Id.* Over the next nine months, all actions taken by Thornton were taken under this power of attorney. *Id.*³

---

² Young had previously licensed certain drug patents to Immune, which her deceased common law spouse, Dr. Bernard Bihari, had developed. Doc. 6 ¶ 6.

³ Young's attorney denies being engaged by Young for any purpose at the time of meeting Thornton. Doc. 9-1 ¶ 8. Young denies signing a power of attorney or, in the alternative, if she did sign it, claims she has no recollection of doing so, as she was still suffering the effects of a severe stroke. *Id.* Furthermore, while Young admits that Thornton devised a strategy to rearrange her personal financial affairs, she claims her attorney had no authority to approve of such a strategy. *Id.* ¶¶ 9–10.

As Young recovered from her stroke, Thornton proceeded to execute the plan. ¶10. He prepared her co-op unit for sale by removing her personal effects and making necessary repairs. *Id.* Specifically, Thornton restored the bathroom to make it code compliant, as required by the board of directors of the co-op before the unit could be offered for sale. *Id.* The restoration cost approximately $30,000, and was financed by a real estate firm. *Id.* Additionally, Thornton hired a real estate agent to market the unit; liquidated some of Young's assets, including a small brokerage account, her 38-year-old Jaguar, and her collection of jewelry; and advanced over $100,000 to pay delinquent maintenance fees, late fees, income taxes, credit card balances, and other expenses. ¶¶ 10–11. During the nine-month period in which Thornton executed these tasks, he worked over 150 hours and kept both Young and her attorney informed of his actions. *Id.*

In January 2020, relations between Thornton and Young started to break down. ¶ 12. Young received an over-the-market bid of $720,000 for the co-op unit from a prospective buyer, which Thornton as well as Young's attorney, brother, personal assistant, and psychologist at her care center strongly recommended she accept. *Id.* Although the buyer waited for months, Young refused to accept the offer, despite Thornton's warning that the next offer would likely be $100,000 lower. *Id.*

Accordingly, Thornton advised Young and her attorney that he would no longer pay her expenses and provided them a detailed accounting of all the expenses he had undertaken. *Id.* He then discontinued his efforts to assist. *Id.* While some of the asset sales covered the cost of his proposed compensation, Thornton alleges that Young still owes him $122,006.04. ¶¶ 11, 13. This figure includes $30,000 for the bathroom restoration that was financed by the real estate firm which sued Thornton for that amount. ¶ 13.

### B. Procedural Background

Thornton commenced this action on December 17, 2020. Doc. 6. On January 19, 2021, Young answered the Complaint. Doc. 9-1. On April 12, 2022, the Court scheduled

an initial court conference for May 20, 2022.  Doc. 10.  On April 26, 2022, Thornton requested a pre-motion conference for his anticipated motion for a voluntary dismissal without prejudice.  Doc. 11.

In his letter, Thornton's counsel explained that he had reached out to Young's counsel on April 19, 2022 to request that Young sign a stipulation of voluntary dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(ii).  Docs. 11, 16.  The next day, Young's counsel replied via email that Young would sign the stipulation only if the dismissal was *with* prejudice and with the additional conditions that Thornton agree to provide a full accounting and undergo an examination under oath by Young's attorney.  Docs. 11, 12, 16.  Thornton declined to agree to the additional terms.  Doc. 11.

The Court granted Thornton leave to file a motion to dismiss without prejudice, which was filed on May 26, 2022.  Doc. 14.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 41(a)(2) provides that once a defendant has answered, absent the defendant's consent, "an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper."  Fed. R. Civ. P. 41(a)(2); *see also Lan v. Time Warner, Inc.*, No. 11 Civ. 2870 (AT) (JCF), 2016 WL 554588, at *1 (S.D.N.Y. Feb. 9, 2016).  "Unless otherwise specified in the order, [such] a dismissal . . . is without prejudice."  Fed. R. Civ. P. 41(a)(2).

Voluntary dismissal without prejudice is "not a matter of right."  *Zagano v. Fordham Univ.*, 900 F.2d 12, 14 (2d Cir. 1990).  However, the presumption in this Circuit is that voluntary dismissal should be granted without prejudice, absent a showing that "the defendant would suffer some plain legal prejudice other than the mere prospect of a second lawsuit."  *Kwan v. Schlein*, 634 F.3d 224, 230 (2d Cir. 2011) (quoting *Camilli v. Grimes*, 436 F.3d 120, 123 (2d Cir. 2006)).  Specifically, "plain legal prejudice" includes "the plight of a defendant who is ready to pursue a claim against the plaintiff *in the same action* that the plaintiff is seeking to have dismissed."  *Ascentive, LLC v. Opinion Corp.*,

4

No. 10 Civ. 4443 (ILG), 2012 WL 1569573, at *2 (E.D.N.Y. May 3, 2012) (quoting *Camilli,* 436 F.3d at 124). Further, it requires that "the cause has proceeded so far that the defendant is in a position to demand on the pleadings an opportunity to seek affirmative relief and [s]he would be prejudiced by being remitted to a separate action." *Paulino v. Taylor*, 320 F.R.D. 107, 109 (S.D.N.Y. 2017) (quoting *Jones v. S.E.C.*, 298 U.S. 1, 20 (1936)).

In *Zagano*, the Second Circuit identified additional factors relevant to determining whether voluntary dismissal without prejudice is appropriate: "(1) the plaintiff's diligence in bringing the motion, (2) any undue vexatiousness on the plaintiff's part, (3) the extent to which the suit has progressed, including the defendant's efforts and expense in preparation for trial, (4) the duplicative expense of relitigation, and (5) the adequacy of the plaintiff's explanation for the need to dismiss." *Kwan*, 634 F.3d at 230 (quoting *Zagano*, 900 F.2d at 14). While courts "will analyze each of these factors individually, [ ] no one factor is dispositive." *S.E.C. v. Chakrapani*, No. 09 Civ. 1043 (RJS), 2010 WL 2605819, at *2 (S.D.N.Y. June 29, 2010).

In *Gravatt*, the Second Circuit established that, under Rule 41(a)(2), a district court, in conditioning a voluntary dismissal on terms it considers proper, "may convert a dismissal sought to be entered without prejudice to one with prejudice." *Gravatt v. Columbia Univ.*, 845 F.2d 54, 56 (2d Cir. 1988). However, fundamental fairness requires interpreting Rule 41(a)(2) to afford the plaintiff "an opportunity to withdraw a motion for dismissal without prejudice . . . before the dismissal is converted to one with prejudice." *Id.*; *see also Shady Records, Inc. v. Source Enterprises*, 371 F. Supp. 2d 394, 396 (S.D.N.Y. 2005).

### III.   DISCUSSION

The Court finds that dismissing the action without prejudice will not cause Young to suffer some plain legal prejudice other than the mere prospect of a second lawsuit. Further, the *Zagano* factors weigh in Thornton's favor.

5

As to the first *Zagano* factor, Thornton acted with diligence under the circumstances in this case. *See Zagano*, 900 F.2d at 14. Less than two weeks elapsed between the time the Court scheduled the initial pretrial conference and Thornton's email to Young's counsel requesting consent to dismiss the case voluntarily. When his request was rejected, Thornton acted diligently to alert the Court and Young before filing the instant motion, when he filed a letter seeking a pre-motion conference. Doc. 14; *see Patterson v. Cruz*, No. 15 Civ. 9405 (ER), 2016 WL 6583702, at *2 (S.D.N.Y. Nov. 2, 2016); *see also Ascentive, LLC*, 2012 WL 1569573, at *4.

As to the second factor, Thornton was not unduly vexatious in bringing this action or filing the instant motion. Vexatiousness refers to instances where "the case was brought to harass the defendant," *Hinfin Realty Corp. v. Pittson Co.*, 206 F.R.D. 350, 356 (E.D.N.Y. 2002), or the plaintiff had "ill-motive," *Shaw Family Archives, Ltd. v. CMG Worldwide, Inc.*, No. 05 Civ. 3939 (CM), 2008 WL 4127549, at * 6 (S.D.N.Y. Sept. 2, 2008). Courts will find ill-motive where, for example, "the plaintiff never had any intention of providing discovery . . . but nonetheless permitted the case to proceed, thereby seeking the advantage of filing its charges without having to support them; or where the plaintiff filed duplicative actions relating to the same injury; or where the plaintiff assured the court it would proceed with its claims but then go[es] back on their word and seeks dismissal." *Paulino*, 320 F.R.D. at 109 (quoting *Banco Cent. De Paraguay v. Paraguay Humanitarian Found., Inc.*, No. 01 Civ. 9649 (JFK), 2006 WL 3456521, at *2 (S.D.N.Y. Nov. 30, 2006)). The Court finds unpersuasive Young's claim that the sole reason Thornton seeks to dismiss this action is to avoid providing a full accounting or an examination under oath. Nothing in the limited record before the Court suggests Thornton initiated this lawsuit or filed this motion either with ill motive or with the expectation that he could recover $122,006.04 without submitting proof of his actions taken under the general power of attorney. Likewise, there is nothing to suggest he brought this case to harass Young.

As to the third and fourth factors, both weigh in Thornton's favor. Young argues that dismissal without prejudice is inappropriate because she intended to bring counterclaims and if this action is dismissed, it will be "close to impossible" to bring a separate action against Thornton because he lives in Canada. Doc. 12. First, Thornton argues that the burden on and expense to Young are minimal because discovery has not yet commenced, there are no counterclaims, and only initial pleadings have been filed and served in this matter. Doc. 11. Second, Thornton contends that, if this action is dismissed without prejudice, Young would still be free to pursue a claim against him. *Id.* Moreover, Thornton argues that she would not be barred from serving him with process simply because he may live outside of the United States. *Id.* Third, while Young may have always intended to file a counterclaim or separate action, she has done neither. Thus, she cannot argue that dismissal is appropriate pursuant to Rule 41(a)(2) only if her counterclaim can remain pending for independent adjudication, as there is no counterclaim in this action. Doc 16. If she believed she had a cognizable counterclaim, she could have asserted that claim at the outset of this action, rather than wait until after discovery. *Id.*

The Court agrees. Although the case had been pending for over a year-and-a-half when Thornton moved for voluntary dismissal, it was still in its early stages. *See Jaskot v. Brown*, 167 F.R.D. 372, 373 (S.D.N.Y. 1996) (granting motion for voluntary dismissal without prejudice, pursuant to Rule 41(a)(2), filed approximately 18 months after plaintiff commenced the action). The standard for concluding that a case "has progressed far enough to weigh against dismissal is high, and is usually satisfied only where substantial discovery, summary judgment motion practice, or trial preparation has occurred." *Am. Fed'n of State, Cty. & Mun. Employees Dist. Council 37 Health & Sec. Plan v. Pfizer, Inc.*, No. 12 Civ. 2237 (JPO), 2013 WL 2391713, at *4 (S.D.N.Y. June 3, 2013). Since the parties have not incurred significant costs or expended significant efforts, any

duplicative expenses or efforts of relitigation would be minimal. *See Patterson*, 2016 WL 6583702, at *3.

Further, granting Thornton's motion would not deprive Young of her day in court. Young has not filed any counterclaims in this action. Doc. 17. Thus, the Court need not consider whether such claims "can remain pending for independent adjudication." Fed. R. Civ. P. 41(a)(2). If Young decides to bring an action against Thornton for conduct arising out of this same incident, she is free to do so. Moreover, the Court is not required to consider the convenience of service of process on Thornton in a future action. *See generally Zagano*, 900 F.2d at 12; Fed. R. Civ. P. 41(a)(2).

Lastly, that Young, who has not filed a counterclaim, merely wants to conduct discovery relevant to claims she *might* bring at a later time is not a legally sufficient basis for denying a motion to dismiss under Rule 41(a)(2).[4] Young did not cite a single legal authority to support her argument. Moreover, she conceded that "[t]here is no question that the Court has the power to dismiss this case" and that "[t]he Court has the power to order a voluntary dismissal here." Docs. 17, 17-2.

As to the fifth factor, Thornton's purported reason for the instant motion is sufficient. Doc. 11; *see Pfizer, Inc.*, 2013 WL 2391713, at *5; *Ascentive*, 2012 WL 1569573, at *6. The explanation Thornton provides for moving to voluntarily dismiss the action without prejudice is simply that he now wishes to do so. Doc. 16. Young contends that the reason Thornton seeks dismissal is that he intends to keep Young's possessions, which he stole from her, without having to account for his actions. Doc. 12. The Court appreciates that Thornton's explanation is conclusory; however, there is no evidence that he seeks dismissal "to avoid the prospect of an adverse decision on a dispositive motion." *Galasso v. Eisman, Zucker, Klein & Ruttenberg*, 310 F. Supp. 2d 569, 573 (S.D.N.Y. 2004); *see Banco Cent. De Paraguay*, 2006 WL 3456521, at *7. Further, because

---

[4] Young explained that she has not filed a counterclaim because "she has no idea what she would be suing for." Doc. 17.

8

dismissal is not contingent on the reason underlying a plaintiff's decision to voluntarily dismiss his claims, Thornton has the right to voluntarily dismiss this action. *See Camillli*, 436 F.3d at 124 (explaining that the Supreme Court clearly established the "right to dismiss . . . is absolute. It does not depend on the reasons which the plaintiff offers for his action. The fact that he may not have disclosed all his reasons, or may not have given the real one, cannot affect his right.") (quoting *In re Skinner & Eddy Corporation*, 256 U.S. 86, 93–94 (1924)).

In sum, nothing about the procedural posture or the facts of this case compels the Court to convert what would otherwise be a dismissal without prejudice into one with prejudice, or to condition the dismissal on the terms Young proposed. Young has not demonstrated that she would suffer some legal prejudice—other than the mere prospect of a second lawsuit—which is required to overcome the presumption in this Circuit that voluntary dismissal should be granted without prejudice. *See Kwan*, 634 F.3d at 230 (quoting *Camilli*, 436 F.3d at 123). Likewise, absent any counterclaims for the Court to consider, Young has failed to persuade the Court why it should condition a voluntary dismissal without prejudice on Thornton's compliance with discovery requests.

## IV.   CONCLUSION

For the reasons discussed above, Thornton's motion for voluntary dismissal without prejudice is GRANTED.

The Clerk of Court is respectfully directed to terminate the motion, Doc. 14, and close the case.

It is SO ORDERED.

Dated:   October 24, 2022
         New York, New York

                                                          _____
                                                          Edgardo Ramos, U.S.D.J.